All right, we'll call our last case of the day Normandy International vs. Ideale Audience. Normandy International vs. Ideale Good morning, Your Honor. Good morning. May it please the Court, my name is Kevin Koch and I represent the Appellant Ideale Audience S.A.S. And you said it even better than I did. What's that? You said it even better than I did. Well, you have to get it right with the client. And I would request three minutes for rebuttal. We're here today to address an injunction that should have never been entered in the first place. And there were serious errors that occurred before the injunction was entered at the hearing and we'll suggest with the entry of the order itself. Some very serious things, for example, the plaintiff, Normandy, walked into court a defunct corporation. It represented in its complaint that it was, in fact, a Delaware corporation when, in fact, according to the records of the Delaware Corporate Bureau, which we didn't discover until after the hearing. Can you raise the mic a little bit? Sure. That it was not a corporation in existence. It was no longer in good standing. Unfortunately, this was a very abbreviated proceeding. We got hired on a Friday to come in early next week and argue the temporary restraining order. And so we didn't discover until after the hearing that it was defunct. Well, we review what the district court does. Yes. What did the district court do on this issue? Well, we filed a motion for reconsideration and to dissolve the injunction. And the district court kept the injunction intact. All right. You'd have to say to us that what was done there, you know, was improper. And that doesn't seem to have impacted the ruling. Now, is this Judge Shapiro's order? Yes, this is Judge Shapiro's order. The second thing was that my client had failed to be properly served with process before the hearing, and therefore the court had no jurisdiction. Well, you were served in July. Yes. However, we were not served at the time that the order was entered, and therefore the court had no jurisdiction at that point in time, and the court had no jurisdiction to enter the injunction. Well, you got a complaint. We did get a complaint.  Yes. And did you object on the basis of service at that point? We raised in our memorandum of law at footnote one that we reserved the right to raise jurisdictional issues, which we didn't fully appreciate until after the hearing. But I'll get into that in a little bit more detail. Now, this case, I mean, this was just an injunction. This case could still proceed, right? Is it proceeding? Well, the case now, Judge Shapiro, a motion for contempt was filed in December of 2008, many months after the injunction was entered, and that injunction, or the contempt motion is held in abeyance pending this court's ruling on the validity of the court's order. But there has never been a permanent injunction here. No. Well, the temporary restraining order is just hanging out there, and so we are now sitting there with an injunction, and parts of the injunction on its face are valid or appear to be ongoing. And so we are in jeopardy, and that's why. One of your complaints is that there should not be a preliminary injunction but only a temporary restraining order. What would be the difference in the result so far in the case if this were a TRO instead of a preliminary injunction? Well, you have to sort of step back in that. The plaintiff, Normandy, knew about the dispute with the party back in March of 2008. They waited until June 11th to file a motion for TRO, knowing that my client, who's in Paris, not in Philadelphia, had to be in Aspen to produce the Aspen Festival, the live production. You had two days' notice, correct? Two business days, that's correct. Now, TRO, you have no notice. They'd go in there without telling you and get a restraining order, correct? That's what happens with the TRO. That can happen on occasion. However, here it was noticed as a TRO. We came in for a TRO. We were not able to have witnesses in at that point in time. My question is, what would be the difference in what is facing us now if this were a TRO rather than a preliminary injunction? I'm sorry, Your Honor. Had the court, in fact, entered the TRO, set this down for a preliminary injunction, we could have investigated all of these issues, for example, the lack of service, the lack of valid corporate status of Normandy. We could have brought witnesses in, potentially witnesses from third-party Aspen Music Festival, and properly defended it. However, as it happened- Defended on what basis? You're not challenging, I mean, I guess you're saying likelihood of success, but you're not really telling us how the court was wrong in finding that there was a contractual violation here. We're not challenging the contractual violation at this point in time, Your Honor. So the question is, what was the proper remedy for the injunction? And we submit, as part of our brief, that by the inclusion of Medici.TV, that was improper because there was no actual evidence presented. But you agreed with Judge Shapiro to the form of the order. You didn't object to the form of the order. No, no, no. We objected to the order. We provided our own order, which, in fact, said that we – the release should only go against the defendant, which is ideal. Medici's not a party to the action. And at the conclusion of the hearing, when we were talking about the inclusion of Medici.TV, I told Judge Shapiro the two were completely separate. What was the problem with the service of process? The service of process – Before you claim that that's completely fatal to the plaintiff's case? Well, at the time – let's start with the basics. I mean, the basic is that the court has to have personal jurisdiction over the party before it enters an injunction. Okay? In order to get personal jurisdiction, the party has to be served with the summons. It is beyond dispute here – there's no dispute that we were not served with a copy of the summons before the hearing. But you didn't object at the first hearing that you attended. What's that? You didn't object to the lack of services. We didn't specifically raise that objection. We did preserve the right to make jurisdictional arguments. And there is a Third Circuit case on point as to when a party waives. That's the Weyroth v. Loser case, a 1967 case. Now, the rule requires service within 120 days. And it stands to reason in injunction and TRO proceedings, you know, if you had to get service through the official route before you'd be entitled to any equitable relief, you might not get your equitable relief. Well, it is – we cite cases to the effect that are in our brief that Rule 65 doesn't create personal jurisdiction, that, in fact, you do need to get personal jurisdiction before you have an injunction entered. You, in fact, finally did get service. Well, I think that's still a bone of contention as to whether the service was proper. It was served on a contractor-slash-employee in Colorado. And whether or not that is proper service, we're still fighting over it. If you get past the service issue, could you comment on the standing issue? You claim that the payment of the corporate fees or outstanding corporate charter payments did not confer standing on Normandy. Sure. Well, Article – there are two separate things that we discussed in the brief. One is capacity. One is Article III standing. Capacity is governed by state law. Article III standing is governed by federal law. And so at the time, what you look at, was there an injury in fact or an invasion of a legally protected right that's being vindicated at that point in time? And according to the law of Delaware, when Normandy entered into this contract with Ideal, it had been a void corporation no longer in existence for more than three years. Why couldn't it fix the problem by paying the required fees? Well, the question is which problem are you talking about? It seems hyper-technical from your standpoint. Well, it's not hyper-technical. It's a requirement that you do have jurisdiction. In Article III, you know, federal courts are limited courts of jurisdiction. But it renewed its charter. Yes. And under the federal law, that renewal is retroactive. Not under the law of Article III standing. That's only under the law of capacity. And we cite the Paradise Creations case out of the federal circuit on that issue. But it's no pro tonk. I'm sorry. Well, that's but as a matter of state law. And Paradise Creations held that that doesn't make it. Is Delaware law superior to federal law? I come from Delaware. Maybe in corporate law. What does standing have to do with it? Well, Article III, let me stand back. The contracted issue here really was a personal service contract between Alexis Denny, who was the principal of Normandy, and my client. You look at the contract. The contract, the only thing it requires Normandy to do is to make sure all of its performance is through Alexis Denny. Now, Alexis Denny is the president of the corporation, and she's the one person who should know whether or not the corporation is valid and whether it has been paying its taxes for several years. And so under Delaware law, when she signs this contract in December of 2007, the company has no power to sign the contract, has no power to sue. And so this is, in effect, a personal services contract between her and IDEAL. And if anyone had standing at the time she filed suit, it would have been Alexis Denny. However, not Normandy. And under Article III. She made it in the name of the corporation, and she doesn't know standing. Well, as far as my, I mean, there is what's called a, I think it's persona intuit clause, which essentially says the only performance. I think I'd have to be studying for the bar exam like my son is in order to understand all these arguments. But go ahead. Which makes it a requirement that all the performance be simply her doing her job. And so at this point in time, when they file suit, Normandy is nothing. It doesn't exist. And so it has no injury, in fact, no redressable injury. In fact, if anyone has an addressable injury, it is Alexis Denny. We agree with you. That's the end of the case. Well, that's the end of the case. The injunction is void, ab initio. The case would get remanded back to the district court to be dismissed. I would assume would be the appropriate remedy. And then at that point in time, if she wants to refile now that she has her corporate house in order, she can do that and pursue her damages action, which I seem very limited on time. But another issue in the case is the fact that there are no damages in this case. Let me back up. All these issues that are technical but perhaps meaningful were raised on reconsideration. And there's a different standard there. Well, I would submit that it might strike some courts that an order that it entered without jurisdiction is a manifest error or a clear error of law, or that given the compressed nature of this proceeding, the discovery of the corporate status after the fact is a new evidence. Because, remember, the plaintiff came into court and filed a complaint that said, we are a Delaware corporation. And so it was only through investigation after the abbreviated proceeding that we learned that they were not in fact. I don't know if you answered, but it was standing presented to the district court, either originally or in the era? It was in the motion for reconsideration slash to dissolve the injunction. And I see that my time is up. All right. We'll hear from you on rebuttal. Thank you. If the court please, my name is Jethro Eisenstein, and I represent Normandy. There is, as you've heard from Mr. Koch, no dispute about a breach, and actually no dispute that we've heard about the propriety of the remedy. A series of technical objections have been raised, and I'd like to address them, at least the ones that you've heard about so far. Certainly with respect to the TRO versus the preliminary injunction, if you look at Rule 65, the rule only makes a distinction with respect to a TRO not on notice. The only things it talks about with respect to a TRO are what you do when the TRO has been granted without notice. Where, as is the case here, a TRO has been granted on notice, it may have a different name, but it is no different from a preliminary injunction. Both are granted on notice, and both result in an order that's entered after an opportunity be heard. So I think that that's really a distinction that's totally without a difference. With respect to the capacity to sue, I don't think I need to address capacity to sue, as it's very clear under Delaware law that the issue of franchise taxes is simply a matter between the corporation and the state. But why follow Delaware? I mean, Delaware is a great place. Don't get me wrong. But why follow state law on an issue that maybe should be federal law? Because otherwise standing is going to depend on which state a matter is presented. Okay. Judge, I actually have a case that I'd like to bring to your attention that is not in my brief, which addresses that particular issue, in other words, the interplay between capacity to sue and standing. This is a case in the Sixth Circuit called City Communications v. City of Detroit. Is it useful for me to read into record the citation? Yes. 888 Fed 2nd, 1081, Sixth Circuit, 1989. You said 888? 888 Fed 2nd, 1081. In City Communications, Michigan had a scheme just like Delaware's. You don't pay your franchise tax, your corporation gets defuncted. I don't know what the right word is. During the pendency of the case by City Communication against the City of Detroit, City Communication became defuncted as a result of not paying its franchise taxes. And the City of Detroit came back in and said, exactly as Mr. Koch is saying, not only do they not have capacity to sue, but they don't have Article III standing, and therefore this case should not be heard in this federal court. The court very quickly disposed of the capacity to sue issue in the same way that Delaware does. It said, Delaware and Michigan say if you pay your taxes, you're non-proton reinstated. And then it proceeded to say, with respect to standing, and that's why I'm bringing the case to the court's attention, it is true that federal jurisprudential concerns and not state corporate law determine a party's standing. However, in evaluating a party's standing, we must look past mere labels to determine whether, quote, the particular plaintiff is entitled to an adjudication of the particular claim asserted, end of quote. And I'll leave the citation out. Just as a corporate charter does not automatically confer standing, temporary revocation of that charter does not deprive a party of standing. Moreover, and I think this is critical for this court's purposes, it would further no federal purposes to attach such significance to a temporary corporate dissolution, which Michigan courts themselves would overlook. Therefore, we hold that this appeal remains a live case in controversy, and CCI has standing to bring these claims into this court. Of course. Which runs completely contrary to Paradise Creations. Exactly, and Paradise. It says that standing is a matter of federal law, and it's determined at the time of filing. And Paradise Creations. And that may be a distinction in your case, because at the time of filing, they had standing and capacity. It was only afterwards that they were determined. But Paradise is a patent case, and it flows from the patent statute, which requires the patent holder to have an enforceable right at that moment. There is no case that Mr. Koch has brought to the court's attention outside of the very statute-intensive patent area which has held what he wants this court to do, which is to say that notwithstanding the Delaware reinstatement of this corporation, and notwithstanding the absence of federal jurisprudential concerns, nonetheless the case should be dismissed because at that moment it did not have standing under or it did not have capacity to sue. You are familiar with Grupo Dataflux case, the Supreme Court case? I'm sorry? Grupo Dataflux? I am not, Your Honor. I don't have the site right here, but that's a Supreme Court case that stated that standing is determined as of the time of filing. Well, Your Honor, the – is it – I don't know. Is it a patent case? No, I don't think so. Okay. Well, the – it seems to me that the central thing about Article III standing is to look – is to step back and look what it's really about. Is there a live dispute that's capable of adjudication? Can a court provide a remedy for it? Let me put it another way. Hasn't Normandy gotten what it wanted? It wanted on the live streaming of the Aspen Music Festival in 2008, it wanted its credits on the video, and it got that. Well, Your Honor, since we filed the contempt motion, which is not part of the record, I can only say to you that from our point of view, it did not get that. In other words, it got an order for that, an order which from our point of view was violated by EDL. That's why we've moved to have EDL punished for contempt. So that there is a live issue still. I appreciate what the court has said. There were the – we asked for an injunction, we got it. But did it get enforced? We say no. And there's a proceeding pending below for a determination to be made with respect to that. And senior standing is, is this the proper party before the court? Now, here Normandy would have the standing because they were the party to the contract. I guess the question is if they're no longer an active corporation, are they nonetheless something? And if they have capacity to sue because it's retroactive, I don't know. But it seems to me, are they the proper party? I don't think there is a party with standing, if not Normandy. I mean, if Denny came in, you'd say, well, she wasn't a party to the contract, so she doesn't have standing. Correct. And I think it really has to be remembered what the purpose of standing is. Article 3 says that courts like this court, like the district court, only decide cases and controversies. The Constitution requires this court to decide actual controversies. And what that means is that you have to have a concrete factual setting in which to decide a legal question, which the court can decide and then provide a remedy. Now, all of those things are present in this situation. And what Mr. Koch is saying is that he is invoking the Constitution to try and bootstrap a state law violation that has no federal consequences because, in fact, this has been a live case in controversy from the very beginning. And it remains one today. A contract was made. It was performed by one side. It was violated by the other. The side that is aggrieved came into court. It sought a remedy. It got a remedy. And Mr. Koch says, ah, it was technically not in existence at the right time, and therefore there's no case of controversy. Well, that's simply not true. Mr. Koch can only win that argument if he persuades this court that form should indeed be exalted over substance for the purpose of Article 3 of the United States Constitution. And I say that all of the cases deciding, standing under Article 3, don't say exalt form over substance. They say look at the ---- Let me give you the site to that Grupo data flux case. It's 541 U.S. 567 at page 574. It's a 2004 case that references a rule of Justice Marshall. It comes from 1829. But let me read it to you very quickly. Jurisdiction, depending on the condition of a party, that would be status, is governed by that condition as it was at the commencement of the action. So it's a rule of filing, basically. What is determinative is at the time that you file the lawsuit. Status is determined at that time. It is not made retroactive by curing a defect subsequently. Well, Judge, I feel at a disadvantage because neither of us has cited this case. I would appreciate an opportunity to look at it and see whether I think that it affects the arguments that I've made. Mr. Koch didn't present it to the court. And I persist in the view that all of the cases that address Article 3 standing seek to determine whether is this a real dispute that a court can remedy if we find that the claim is valid. And everything about that is here. On the merits, have you gotten everything that you should get? I mean, breach of contract still exists, doesn't it? I'm sorry? A breach of contract suit still exists. I think statute of limitations of six years. Correct. Another suit could be brought for that. Yeah. But if this court were to say that the injunction was not properly made because Normandy didn't have standing, then the ability to seek a remedy for what we claim is a violation of the injunctive order entered by Judge Shapiro would be lost. But if that's also a breach of contract, it would not be lost. Well, there would be. There would be damages of a different kind. There would be no damages available for the proposition that Judge Shapiro entered an order and you violated it. Correct. Correct. But there's underlying damages as a result of the breach. That's. Yeah. But I don't know that we could collect damages. Considering that, maybe the two of you ought to get together and talk about it. Well, there's no question that we'll do that. But, unfortunately, we have to persist in our request that you make a decision on the pending appeal. It sounds to me that I just want to say with respect to service, because that's another issue that came up with Mr. Koch, that what's left out of the discussion so far is the fact that in the agreement, EDL submitted to the jurisdiction of the exclusive jurisdiction of the jurisdiction. Well, that's not really the same as doing away with, I mean, that doesn't do away with the requirement for a summons under rule four. Well. I mean, you can submit to the jurisdiction, so you don't have to chase somebody all over the world and have them contend that, you know, there's no personal jurisdiction because I don't have sufficient contacts. That's really what, that's really what a jurisdiction clause in a contract. Judge, there are a lot of different, different kinds of jurisdiction clauses. And there are, for example, ones that say simply that this isn't the exclusive jurisdiction and don't say anything about submitting, which means you have to chase somebody. But once you chase them and find them, this is the exclusive jurisdiction. There's no reference to the rule. It says that, you know, I'm waiving the requirement of a summons. That would have to be pretty specific. But it's a submission. Summons was served by a messenger and not by a WCA. Is that the? That's right, but not by a WCA. And, in fact, what was served was exactly what Judge Padova directed us to serve, which was the complaint. While we're pronouncing things, it's Padova. I knew I would get that wrong. I have always gotten it wrong in every forum where I sit. Okay. Judge Padova directed us to serve that and we served what he said. But getting back to your point and both of your points, I persist in the view that submit is the opposite of object. Submit is a waiver of objection. There's no subject matter jurisdiction. In fact, the rule, 4D1, says that a party has an obligation to avoid the expense of serving the summons. Everything about the rule says serving a summons is a technical thing and it is not necessary if there's consent. Now, here there is consent. Submission to jurisdiction means that I am not going to raise technical objections to jurisdiction that has been acquired. I mean, what else does submit mean? You can agree to submit to jurisdiction, but that doesn't mean that you agree to submit to service a process. Or you consent to a waiver. Well, if it's, you know, I've cited to the court several cases, including a decision in the Bank of New York case by Judge Mukasey, that say submit is the opposite of object and that a submission to jurisdiction is the waiver of any conceivable objection to jurisdiction. It's the any conceivable that I think is. Well, considering that what we have here is simply the summons when there's no due process issue, there's no notice issue, these people knew what the case was about, came in and responded to it. It is a hyper-technical point. Was the summons served within 120 days? Yes. It was served within about 30 days after the action was commenced. All right. Thank you. Thank you. Mr. Koch? Just briefly, with respect to the city commission, I think City of Detroit case, that was the first time I heard of that this morning. I think if both of you want to comment on that case, how it's persuasive and also comment on Judge Fuentes, the Grupo case, why don't we ask you to submit no more than three page letter briefs within 10 days? Yes. That's what we request. Both of you at the same time. Okay. And as far as the, Judge Roth, you had indicated that the summons may have been served by the, and I won't murder that French word. Not by a WCA, but by a messenger. It was not, there was no summons in the initial packages, either the first or second attempt to serve. So that was incorrect. And as far as complying with what Judge Padova ordered, Judge Padova ordered them to comply with rule four, and rule four specifically requires that they serve a summons of process. That was in his order setting down the TRO hearing. The last thing, Judge Rendell, you had indicated that you thought that only the Normandy would be a proper party. As what happened here was that at the time, Who signed the contract? Well, Alexis Denny signed it. And at the time she signed it. As an officer of Normandy? Yes. Or individually? Well, as an officer of Normandy, but it only called for her performance. That was the only thing required by the contract. And also she did so at the time that the corporation had no power whatsoever to enter into any contracts at all. And so to the extent it's an act of the corporation, it was null and void at that time, and it's only. What are the provisions of Delaware law as to what this failure to pay visits upon you? Sure. We've cited them in the brief. And they are, well, there's no power to enter into new contracts. And the only power within three years after that is to wind down the affairs of the corporation. And that's in Eighth Delaware Code Sections 510 and Sections 278. But yet having, but for its own purposes, then when it paid. Yes. It undoes it. Undid the. But we're back to Group O data flux in that at the time they filed suit, they hadn't unwound the failure to pay. And so Normandy had no power at that point. The only person, and I would suggest that the person who did have standing to sue at that point, since it was a contract for her own personal services and it was signed by her and the person who should have known that her corporation was void would be Alexis Denny. But she's not a part of it. All right. Thank you, Your Honor. Thank you. Your Honor, I know this is unorthodox, but the reinstatement statute is attached to my red brief. All right. All right. Could we see counsel at sidebar for a moment and turn off the microphone, please? Thank you, Patrick.